APPEAL OF DOROTHY PAYNE WHITNEY STRAIGHT, EXECUTRIX, ESTATE OF WILLARD STRAIGHT.

Docket No. 2548.   Promulgated June 6, 1927.

A decedent acquired certain property subsequent to March 1, 1913. Upon his death the property passed to his executrix and was thereafter sold by her. *Held*, that the basis for determining the gain or loss resulting from the sale is the value of the property at the date of the decedent's death and not the cost to the decedent.

*Swagar Sherley, Esq.,* and *Charles F. Wilson, Esq.,* for the petitioner.

*E. C. Lake, Esq.,* for the Commissioner.

This is an appeal from the determination of a deficiency in income tax for the fiscal year ending November 30, 1919, in the amount of $261,573.93. The alleged deficiency resulted from the failure of the petitioner to include in the tax return filed by her as executrix the income received by the estate from the sale of stock owned by decedent at the time of his death, said stock having been acquired by decedent subsequent to March 1, 1913, and sold by the executrix during the taxable year for an amount in excess both of the cost to decedent and of the value as of the time of decedent's death.

### FINDINGS OF FACT.

Willard Straight, a citizen of the City of New York, died testate on the 30th day of November, 1918, and by his will, duly admitted to

probate in the Surrogate's Court of Nassau County, New York, appointed the petitioner, Dorothy Payne Whitney Straight, executrix of his estate. The petitioner accepted the trust imposed on her by the will and on April 12, 1919, was duly appointed and qualified as the sole executrix of the will and ever since has been and now is such executrix.

Among other assets of the estate of Willard Straight there came into the hands of the petitioner as executrix certain stocks purchased by decedent during the years 1916, 1917, and 1918, at an aggregate cost of $2,414,978.60. The said stocks were appraised at $2,158,510 by appraisers duly appointed by the Surrogate's Court of Nassau County, New York, which appraisal was approved by said court. The fair market value of the stocks at the date of decedent's death was $2,158,510.

No Federal estate tax was paid by petitioner as decedent died overseas in the military service of the United States Government and his estate was exempt from the Federal estate tax and no valuation was made of the assets of the estate for estate-tax purposes by the Bureau of Internal Revenue.

During the fiscal year ending November 30, 1919, the petitioner as said executrix, in the proper liquidation of the estate sold these stocks for an aggregate amount of $2,639,287.96, said amount being $480,-777.96 in excess of the value of said stocks as of the date of the decedent's death, and $224,309.36 in excess of the original cost to decedent. In determining the deficiency involved in this appeal the Commissioner included said sum of $480,777.96 as taxable income.

OPINION.

GREEN: The facts in the case are not in dispute and are comparatively simple. Petitioner advances two contentions: (1) That " the law does not embrace as taxable gain income arising from a sale by an executrix such as here occurred because no basis for determining the gain is here provided for"; and (2) if any taxable gain resulted, " the basis is the cost to the testator of the stock and the taxable gain the difference between such cost and the sale price received by the executrix."

The pertinent sections of the Revenue Act of 1918 are as follows:

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

\*        \*        \*        \*        \*        \*        \*

(b) The fiduciary shall be responsible for making the return of income for the estate or trust for which he acts. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212 \* \* \*.

(c) In cases under paragraph (1), (2), or (3) of subdivision (a) the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary * * *. In such cases the estate or trust shall, for the purpose of the normal tax, be allowed the same credits as are allowed to single persons under section 216.

SEC. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and

(2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203.

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; but

(b) Does not include the following items, which shall be exempt from taxation under this title:

\*        \*        \*        \*        \*        \*        \*

(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income).

Petitioner admits that an executrix is accountable generally for tax purposes for any income of the estate in her hands, but contends that in this particular situation there is a hiatus in the law and no basis for determining taxable gain is provided. This argument is predicated on the theory that since the executrix paid nothing for the property coming into her hands as executrix, there was no cost to the executrix and therefore there is no starting point for determining taxable gain. The Commissioner contends, on the other hand, that the estate is a separate taxable entity and that the "cost" of the stock to executrix, which is to be used as a basis, is the value of the stock as of the date of death of decedent.

The Revenue Act of 1918 clearly states that the income of estates shall be subject to the income-tax provisions, and it therefore follows that petitioner, as executrix, should include such taxable gain as

resulted from the sale of stocks during the taxable year in her return of income for the estate.

The second and more serious question is as to the basis to be used in the computation of the gain resulting from the sale of the stocks by the estate, and here we want to emphasize the fact that it is a sale by the executrix of property which is a part of the estate and with which the executrix is concerned only because she represents the estate and is by statute required to pay tax on its income.

The petitioner contends that the cost to the deceased should be used as the basis. The Commissioner contends that the value of the stocks as of the date of the death of the decedent should be used as the basis, there being no dispute that the appraised value fixed by the New York Surrogate's Court is correct.

Prior to the passage of the Revenue Act of 1921 there was no statutory provision fixing the basis for either gifts, devises or bequests. The Revenue Act of 1913 and each subsequent act has had in it provisions which indicate (if they do not in fact prescribe) the fundamental principle to be applied.

Section II B of the Revenue Act of 1913, in so far as it is here material, reads as follows:

That * * * the net income of a taxable person shall include * * * income derived from any source whatever, including the income from but not the value of property acquired by gift, bequest, devise, or descent * * *.

It is significant that section II B excludes from income the value of property acquired by gift, bequest, etc.

The substance of this provision was reenacted in the Revenue Act of 1916. Section 2(a) of that Act, with the exception of the omission of the word " lawful," an omission not here material, and the elimination of the words " including the income from but not the value of property acquired by gift, bequest, devise, or descent," is exactly the same as the quoted portion of section II B of the Revenue Act of 1913. Section 4 of the Revenue Act of 1916 provides that " The following income shall be exempt from the provisions of this title: * * * the value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in income)." In the succeeding revenue acts the identical limitation provided in section 4 of the Revenue Act of 1916 has been reenacted as section 213(b) of each of the acts, changed only by the insertion of the word " gross " before the word " income."

Paragraph 44 of Regulations 33 reads as follows:

The appraised value at the time of the death of a testator is the basis for determining gain or profit upon sale subsequent to the death after March 1, 1913.

Article 1562 of Regulations 45 reads in part:

In the case of property acquired by gift, bequest, devise, or descent the basis for computing gain or loss on a sale is the fair market price or value of the property at the date of acquisition or as of March 1, 1913, if acquired prior thereto.

Similar provisions appear in Regulations 62 and 65, and the Commissioner has consistently computed the gain on property sold by an executor to be the difference between the sale price and the value at the date of the death of the decedent, or the March 1, 1913, value if he died prior to such date.

In the case of *Bankers' Trust Co.* v. *Bowers*, 295 Fed. 89, the court said: " The estate and deceased were separate entities, each having a separate accounting." See also *Catherwood* v. *United States*, 291 Fed. 560, in which the ruling of the lower court to the effect that there are not two separate entities in the person of the decedent and her estate, was reversed.

The same question was carefully considered by the Court of Claims in *Nichols* v. *United States* (decided April 4, 1927; 6 Am. Fed. Tax Rep. 6592). There that court said:

For taxation purposes the individual's income during his lifetime and the income of his estate after his death are distinct things, the individual and his estate being separate entities.

The petitioner herein concedes that where property passes to a devisee or legatee, the basis is the value at the date of acquisition, but contends that an executor does not acquire property by gift, bequest, devise or descent. The answer to this contention is to be found in the case of *Merchants' Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509. In that case one Ryerson died in 1912 leaving a will wherein it was provided that his trustee, named therein, should take certain property with full authority to sell or otherwise dispose of it. Pursuant to the authority vested in him by the will, the trustee, in 1917, sold certain corporate stocks. The Commissioner treated the difference between the March 1, 1913, value and the sales price as income and assessed and collected the tax. The court held that the sale gave rise to income; that the trustee was a taxable person and that he was liable for the tax on the income thus derived.

In the *Merchants' Loan & Trust Co.* case the court said:

Assuming for the present that there was constitutional power to tax such a gain or profit as is here involved, are the terms of the statute comprehensive enough to include it?

Section 2(a) of the Act of September 8, 1916 (39 Stat. 757; 40 Stat. 300, 307, § 212), applicable to the case, defines the income of " a taxable person " as including " gains, profits and income derived from  *  *  *  sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property,  *  *  *  or gains or profits and income derived from any source whatever."

Plainly the gain we are considering was derived from the sale of personal property, and, very certainly the comprehensive last clause " gains or profits and income derived from any source whatever," must also include it, if the trustee was a " taxable person " within the meaning of the act when the assessment was made.

(4) That the trustee was such a " taxable person " is clear from § 1204(1) (c) of the Act of October 3, 1917, c. 63, 40 Stat. 331, which requires that " trustees, executors * * * and all persons, corporations, or associations, acting in any fiduciary capacity, shall make and render a return of the income of the person, trust, or estate, for whom or which they act, and be subject to all the provisions of this title which apply to individuals."

And § 2(b) of the Act of September 8, 1916, *supra*, specifically declares that the " income received by estates of deceased persons during the period of administration or settlement of the estate, * * * or any kind of property held in trust, including such income accumulated in trust for the benefit of unborn or unascertained persons, or persons with contingent interests, and income held for future distribution under the terms of the will or trust shall be likewise taxed, the tax in each instance, except when the income is returned for the purpose of the tax by the beneficiary, to be assessed to the executor, administrator, or trustee, as the case may be.

Further, § 2(c) clearly shows that it was the purpose of Congress to tax gains, derived from such a sale as we have here, in the manner in which this fund was assessed, by providing that " for the purpose of ascertaining the gain derived from the sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such gain derived."

Thus, it is the plainly expressed purpose of the act of Congress to treat such a trustee as we have here as a " taxable person " and for the purposes of the act to deal with the income received for others precisely as if the beneficiaries had received it in person.

Thus the rule is settled that a trustee is a taxable person; that the sale of property by him gives rise to taxable gain and that in the case of property acquired prior to March 1, 1913, the gain is measured by the difference between the sale price and the value on that date.

The sections of the statute which impose a liability for taxes upon a trustee impose the same liability upon executors. If in the *Merchants' Loan & Trust Co.* case the trustee was liable for taxes, it follows inevitably that executors have the same liability.

The remaining question to be disposed of arises from the fact that in this case the property was acquired subsequent to March 1, 1913. As we have pointed out above, the provisions excluding the value of property acquired by devise or bequest have been carried into each of the revenue acts. The petitioner concedes that these provisions establish value at the date of acquisition as the measure of gain in the case of property sold by a devisee. If then the gain realized by an executor is to be computed as if he had received it

as a devisee and, if in the hands of a devisee value at the date of acquisition is the basis, it follows that value as of the date of acquisition is the basis of property sold by an executor.  This is but another way of giving effect to the value provisions of the statute which we have heretofore quoted.

In this case the value is less than the cost, with the result that gain is greater than it would have been if cost had been used as the basis.  In the ordinary case the value is greater than cost and the gain is less than it would have been if cost had been used as a basis. In the latter case, if cost to the decedent had been used, as is here contended for, the gain thus computed would be in excess of the actual income to the estate and we would be compelled to hold that the income thus computed should be reduced by the excess of value over cost.  As was aptly said in *Bankers' Trust Co.* v. *Bowers*, 295 Fed. 89, "We must accept the fact that income tax statutes are designed and intended to reach actual income received by the taxpayer."

The court in the last paragraph quoted from the *Merchants' Loan & Trust Co.* case says in no uncertain language that income received by a trustee is to be taken precisely as if the beneficiaries had received it in person and holds that in the case of property acquired prior to March 1, 1913, the basis for the computation of gain or loss resulting from sale is the value on that date.  While not important, it should be noted that it is the value in the hands of the trustee (the taxable person) and not the value in the hands of any one else.

The Court of Claims in *Nichols* v. *United States, supra*, had before it a question which is inseparably interwoven with the question here under consideration.  There that court had before it this set of facts. The deceased was a member of a partnership.  Prior to his death the partnership had earned certain fees and commissions.  Subsequent to his death these fees or commissions were collected and the decedent's distributive share thereof paid over to his executors.  The Commissioner determined the value of the decedent's interest in the partnership at the date of his death, including therein the value of the commissions earned but unpaid, and included such value in the gross estate for estate-tax purposes and the tax was paid thereon.  The executors included in their return of income the amount of the decedent's distributive share of the commissions collected subsequent to his death, paid the tax thereon, and subsequently brought suit to recover the amount so paid.  After reciting the facts the court said:

\* \* \* It thus appears that the one item has been treated as part of the value of the gross estate for estate-tax purposes and as part of the gross income of the estate for income tax purposes, and the question for decision is whether it can be made to serve in these two capacities.  We think the answer must be in the negative.  For taxation purposes the individual's income during his lifetime and the income of his estate after his death are

distinct things, the individual and his estate being separate entities. The taxing statute makes plain this distinction, because Section 210 of the Revenue Act of 1918, 40 Stat. 1062, imposes a normal tax upon the "net income of every individual," and Section 219 imposes the same rate of tax upon the income of estates, "including income received by estates of deceased persons" during the period of administration. Section 401 imposes a tax upon "the transfer of the net estate of every decedent" dying after the passage of the act. This net estate is to be determined (Sec. 402) by taking the value of the gross estate of the decedent, including therein "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated," and making certain authorized deductions. * * * An interest thus ceases and the estate interest begins at the time of the death. When, therefore, an item is properly determined to constitute a part of the gross estate of a decedent for estate-tax purposes it can not by any sort of reasoning be made to constitute a part of the income of the same estate. It is a part of its corpus. * * * It is not to be presumed that Congress intended to subject the corpus of the estate to double taxation (see *Supplee-Biddle Hardware Co. case*, 265 U. S. 189, 195) [U. S. Tax Cases 2d Supp. 1552], though income accruing as such to the estate during administration is an addition to the estate itself, which is taxable as income. The contention of the Government that "there can be no capital in the estate unless that which constitutes the capital item has first been treated as income, either of the decedent or of the estate," can not be readily accepted, but when this premise is followed by the admission that the plaintiffs "correctly argue that there was no income to the decedent" and that, therefore, the distributive share of commissions received from the partnership must be income of the estate, it is manifest that the assumed premise is itself at fault.

It is true that on the estate of this decedent no estate tax was paid but we regard that fact as of no importance and treat the question as if this decedent had had a net estate upon which the estate tax had been paid. It is clear that under ordinary circumstances the value of the stocks sold by the decedent would have been included in the value of the gross estate and we hold, as did the Court of Claims, that the whole thereof became a part of the corpus of the estate. It is a matter of no importance that at the time they became a part of the corpus their value was less than their cost to the decedent. The rule is the same whether their value is above or below such cost.

As was said by the Court of Claims, "The income of an estate which the statute taxes is, generally speaking, the income which accrues after the estate begins, and it begins with the decedent's death." The estate did not receive or acquire income when the stocks passed to it upon the decedent's death. What it received was a part of corpus of the estate, no part of which could at the same time be income. It is expressly provided that in the computation of gain from such sale there shall be exempt "the value of property acquired by gift, bequest, device, or descent" and this we expressly hold is applicable to sales by an executor. To hold otherwise would result

in the application of one rule for the computation of gain or loss on a sale by an estate and an entirely different rule for such a computation in the case of a sale by a legatee or a devisee.

In *Merchants' Loan & Trust Co.* v. *Smietanka, supra,* the court held that income received by a trustee of an estate is to be computed and taxed the same as that of a beneficiary and we hold precisely the same as relates to the income of an executor of an estate, for, as we have pointed out, both are taxed under the same sections of the revenue acts. In the *Appeal of Elizabeth J. Bray, Administratrix,* 4 B. T. A. 42, we reached the same conclusion, but did not set forth in the opinion our reasons therefor.

The Circuit Court of Appeals for the Second Circuit in *Rice* v. *Eisner,* 16 Fed. (2d) 358, had before it the question of the basis to be used in the computation of the gain from the sale of property acquired by gift.

In arriving at his conclusion that the value on the date of acquisition (that date being subsequent to March 1, 1913) was the basis, Judge Learned Hand said:

On the main point we have no question that the learned District Judge was right. The first paragraph of Subdivision B of section 2 of the Act of October 3, 1913 (38 Stat. 167), provides that the income taxable "shall include gains, profits, and income derived from * * * sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in real or personal property, * * * or gains or profits and income derived from any source whatever, including the income from but not the value of property acquired by gift, bequest, devise, or descent." This is the only relevant enactment, and the question is whether it includes "gains . * * * derived from sales" of personal property acquired by gift. Section 2(a) of the Act of September 8, 1916 (Comp. St. § 6336b), defines taxable income in the same language, but omits the words "including the income from but not the value of," etc., just quoted. These occur, however, in section 4 of that act (Comp. St. § 6336d), among the exemptions allowed as follows: "The value of property acquired by gift, bequest, devise or descent (but the income from such property shall be included as income)." We can see no conceivable difference between the meaning of the two statutes; the fact that in the first the exemption is coupled with the definition of the taxable income, while in the second it is placed among the exemptions, is of no consequence whatever.

That appreciation in the corpus of property received upon bequest is taxable under the act of 1916 was expressly held in *Merchants' L. & T. Co.* v. *Smietanka,* 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. True, in that case the person assessed was a testamentary trustee, but that can make no difference, for trustees are taxed like other individuals. Nor can it, of course, be a distinction that the case at bar involves a gift, and not a bequest. *Gray* v. *Darlington,* 15 Wall. 63, 21 L. Ed. 45, was definitely held to be inapplicable because of the difference in language of the statutes, and *Lynch* v. *Turrish,* 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087, was distinguished because no gains had been made since the law was passed.

By section 2(c) of the Act of 1918, it was provided that the gain derived from the sale of the property acquired before March 1, 1913, should be taken

as its appreciation since that day, and the same provision was contained in section 202 of the Act of February 24, 1919 (Comp. St. § 6336⅛bb). Until 1921 nothing specific was said about computing the gain on gifts and bequests, but by section 202(a)(2) of the Act of November 23 of that year (Comp. St. § 6336⅛bb), it was provided that, when gifts were made before January 1, 1921, their value should be taken as of the time of their acquisition, and thereafter at the time when the donor acquired the property. The argument is that then for the first time did Congress mean to tax the profit on gifts at all, since only then did it provide a means for computing it. If so, Congress did not mean to tax the appreciation of purchased property between 1913 and 1916, because only in 1916 was any rule laid down which professed to cover it, and then only in a form equally applicable to gifts and bequests. *The argument proves too much.*

The act of 1921 was apparently passed for quite another reason; that is, in the future to prevent donors from escaping the high taxes prevailing by giving property to their wives or children. As the latter would be allowed on any subsequent sales to subtract the value of the gift when they received it, and as a gift was not a sale as regards the donors, all increment escaped taxation which had accrued during the ownership of the donors. As to earlier gifts the rule remained as it had been in practice applied before the act of 1921 was passed. From this no inference can be made that, before the statute fixed the rule, gifts were not to be taxed at all, but rather that the computation of profits upon gifts had been left to the regulation of the department, as it had certainly been on purchases for the first three years. As difficulties in administration arose, Congress met them, following probably the suggestion of the department itself.

The exemption in all the statutes of the corpus of gifts and bequests shows that in the minds of those who drew the acts it was thought open to question whether even this might not be considered income. To suppose that in addition they meant to exempt profits upon them, while taxing profits on purchases would be a curious inversion of any fair incidence of the tax. Conceivably one might imagine the opposite a tenable notion; but the suggestion of the plaintiff appears to us to presuppose, not only a baseless, but an unjust, distinction. We have no doubt, quite independently of authority, that from the outset the profits on gifts and bequests was included with gains derived from the sale of all kinds of property, however acquired. So much for the plaintiff's liability.

The provisions of the statute considered by Judge Hand are the same as those considered by us. The basis for the computation of gain or loss resulting from the sale of property of an estate by an executor, is the same as the basis in the case of sale of property acquired by gift, namely, the value at the date of acquisition if that date be subsequent to March 1, 1913, and since an executor is a taxable person, the gain to the estate must be computed on that basis and the tax paid thereon. The Commissioner's regulations have always prescribed this basis. The law has been changed only in its minor details. In all of the revenue law there are few better illustrations of legislative approval of departmental regulation. If needed, much support for our conclusion is to be found in this legislative history. In so holding we are aware that our conclusion can not be reconciled with that reached by the Court of Claims in *McKinney* v. *United*

*States*, 62 Ct. Cls. 180. However it seems to us that court did not have brought to its attention the full force and effect of the principles established in the *Merchants' Loan & Trust Co.* case. We also have the advantage of having the opinion of Judge Hand in the *Rice* case.

*Judgment will be entered for the Commissioner.*

PHILLIPS concurs in the result.

SMITH dissents.

VAN FOSSAN, dissenting: I am unable to concur in the prevailing opinion of the Board. It has long been accepted as almost axiomatic that an executor " stands in the place and is regarded as the representative of the deceased person for the purpose of settling his affairs and distributing his estate." 11 R. C. L. 23. The reasoning employed in the majority opinion seems to me to disregard utterly this conception and to ignore also the fundamental fact that Congress intended to tax actual profits received from a sale of property and did not contemplate fictitious or arbitrary bases for determining the same. *Goodrich* v. *Edwards*, 255 U. S. 527.

In *McKinney* v. *United States*, 62 Ct. Cls. 180, in which a writ of certiorari was refused by the Supreme Court, a case in all essential respects identical with the instant case, the Court of Claims held directly the opposite of the view adopted by the Board. I believe that the reasoning of that case is sound and that the same principles should govern here.

ARUNDELL and TRUSSELL concur in the dissenting opinion.